IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Frontier Communications of the Carolinas, LLC, | ) Civil Action No.: 4:14-367-BHH<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) **AMENDED OPINION AND ORDER** |
| International Brotherhood of Electrical Workers, Local 1431, | )<br>)<br>) |
| Defendant. | )<br>) |
| _____ | ) |

This matter is before the Court on cross-motiond for summary judgment (ECF No. 37, 38), both filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. Frontier Communications of the Carolinas LLC filed a complaint against International Brotherhood of Electrical Workers, Local 1431 on February 10, 2014, asking the Court to vacate an arbitration award issued under a collective bargaining agreement ("CBA") between Frontier Carolinas and Local 1431, which mandates that disputes concerning the interpretation and application of the CBA be resolved by final and binding arbitration.

## BACKGROUND

The plaintiff and defendant are party to a collective bargaining agreement ("CBA"), effective from March 27, 2011 through March 29, 2014. (ECF No. 1-2.) The CBA contains a procedure for adjusting "grievances." The CBA defines a "grievance" to include "any alleged action by the plaintiff or its representatives which causes an employee to lose his/her job or any benefits arising out of his/her job." (CBA § 6.1.) The CBA further provides for "final and binding" arbitration of any such disputes not settled through the

1

grievance process. *Id.* §7.4.

On December 13, 2012, the defendant filed a grievance alleging that the plaintiff had terminated the employment of Jason Cambest without just cause in violation of the CBA. The parties were unable to resolve the dispute through the grievance process. The parties, through the Federal Mediation and Conciliation Service, selected arbitrator Hoyt N. Wheeler to determine their dispute. Arbitrator Wheeler held a hearing on the parties' stipulated issue: "Was the discharge of Jason Cambest in violation of the collective bargaining agreement and, if so, what should be the remedy?" (ECF No. 1-1 at 1, 5.) On November 18, 2013, Arbitrator Wheeler issued his decision, finding the discharge of Cambest was in violation of the CBA and ordering the plaintiff to reinstate Cambest and pay backpay from the time of his termination until he resumed his employment. *Id.* The Company has refused to comply with the arbitrator's award.

It is undisputed that, on June 27, 2011, Cambest, a Sales and Service Technician performed a service call at a residence in Myrtle Beach, South Carolina, while a mother and her eight-year-old daughter were in the home. On July 11, 2011, the plaintiff received a warrant for the identity of the technician who had serviced the home. It is further undisputed that the warrant stated that the technician had exposed his genatalia and fondled himself in front of an eight-year-old girl. The child's mother contended that he "was either adjusting himself or adjusting his belt, that his private part came out and . . . he messed with it and put it back in" and that he did not say anything to her. (ECF No. 1-1 at 5.) After the plaintiff identified Cambest as the technician, he was arrested and charged with Solicitation of a Minor. He was released on $3,500 bail.

The Myrtle Beach Police Department directed the plaintiff not to contact the family

of the alleged victim to avoid interference with the investigation or prosecution of the alleged crime. (Compl. ¶ 14; Answer ¶ 14.) The plaintiff suspended him. Cambest's trial date was delayed several times, but he ultimately pled guilty on November 13, 2012, in accordance with *North Carolina v. Alford*, 400 U.S. 25 (1970), to the offense of Contributing to the Delinquency of a Minor, which makes it a crime for "any person over eighteen years of age to knowingly and willfully . . . injure or endanger [a minor's] morals or health." (Compl. ¶¶ 9, 18.)

Upon learning of Cambest's guilty plea, the Company resumed its internal investigation and conducted an interview with Cambest, on November 20, 2012. The Company concluded its investigation and decided to terminate Cambest's employment, on November 29, 2012. (Compl. ¶ 19; Answer ¶ 19.)

The plaintiff emphasizes that the Solicitor, in the underlying prosecution, admitted that the case had been "aggressively overcharged" and reduced the charge to the misdemeanor of contributing to the delinquency of a minor, "removing all sexual aspects of the case." (ECF No. 1-1 at 4, 5.) The Arbitrator noted that the Solicitor also described the alleged conduct as "ambiguous as to both what occurred and what was [the] Grievant's intent." *Id.* at 9. Cambest did not plead guilty to a sexual offense. Rather, to resolve the matter, Cambest entered an *Alford* plea to the misdemeanor charge of contributing to the delinquency of a minor. During the sentencing hearing, the Solicitor stated on the record that the reduced charge had taken "all of the sexual nature of the offense out of the picture." *Id.* at 4, 5. Cambest was "sentenced" to pay a $200 fine, which he paid. He did not receive any jail time other than the one day he had served when he was arrested. He was not placed on the sex offender registry, and Cambest's record was expunged of all

charges. *Id.* at 5, 8.

## STANDARD OF REVIEW

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654,

4

655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

Remarkably, the parties have written to the limits of the local rule briefing requirement, on cross motions for summary judgment, some 80-plus pages. The Court would like its own brevity to make the strongest statement about the quality of this case. The Court is fully aware not only of the liberties and interests at stake, the right to work and the rule of law, and, additionally, the deep systemic value of adversarial process that justifies the controversy. Cambest, in the most technical sense, is due the defense of his employment and reputation here. The Union is legally so bound. At the same time, it is a seemingly unacceptable result, and indicative in some sense of the fault in our system, the energy applied by these litigants, and now the Court in necessary review, to decide what should be the most obvious result – that the plaintiff has every legal, business, moral, and public policy interest that it err on the side of this individual never representing it, unsupervised, in South Carolina homes again. That is not a statement about Cambest as a person or his freedom to work elsewhere or even really about the actual quality of his

prior conduct. But, rather the Court means to emphasize the narrowest point that the circumstances here scream the plaintiff's right, over any prior agreement in collective bargaining, to discontinue the employment relationship for the extraordinarily rational public policy grounds of concern for public safety. This is not a great legal controversy. Said differently, the Court itself, unlike the arbitrator below, is unequivocally not reevaluating the truthfulness of the underlying allegation against the plaintiff, whether willful or incidental. Rather, the question is whether the plaintiff, subject to arbitration in collective bargaining, should be forced to reinstate an employee who has pled guilty to an offense, which does say something very specific about the underlying allegation of risk to minors. In other words, is it not the public policy of this State that the plaintiff should be able to so rely on the guilty plea under the circumstances?

Of course, as is true in a 100% of the cases before the Court, clever lawyering has made sophisticated that which the law should be able to treat plainly. The Court will deflect with these brief words.

The Court would simply start with the most salient fact in this case. There is no debate. Cambest pled guilty to S.C. Code § 16-17-490(10), pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). Section 16-17-490(10) makes it unlawful for a person over eighteen years of age to "knowingly and wilfully encourage, aid or cause or to do any act which shall cause or influence a minor . . . . (10) To so deport himself or herself as to wilfully injure or endanger his or her morals or health or the morals or health of others." *See* S.C. Code § 16-17-490(10); (see also ECF No. 38-5 at 13-14 (showing solicitor explained that Cambest's plea was to the provision of S.C. Code Section 16-17-490 on injuring or endangering the morals of a child)). By entering an *Alford* plea, the defendant

6

waives a trial and accepts punishment, but he does not admit guilt, and the prosecutor's proffer of what the State would have proved at trial does not amount to an admission or acceptance of the facts by the defendant. *See Alford*, 400 U.S. at 38.  Rather, it serves the role of providing the court with a basis by which to evaluate the voluntariness of the defendant's plea.  *See id.*

Notwithstanding, the Arbitrator found that the *Alford* plea was an insufficient basis to justify the plaintiff's decision to terminate Cambest's employment, as it was somehow no indication of his conduct and, therefore, the plaintiff was left with no good cause as required by the CBA.  In so doing, the Arbitrator, inartfully, referred to the plaintiff as having pled no contest.  (ECF No. 1-1 at 9.)  The plaintiff reasonably has concerns about the misnomer.  In one sense, the Arbitrator's casual characterization of the plea as one in *no contest* is irrelevant.  Through improper nomenclature, he cannot change its legal effect.  In another, it is literally the entire problem:  He *cannot* change its legal effect.

The "entry of an *Alford* plea at a criminal proceeding has the same preclusive effect as a standard guilty plea" so that defendants "must likewise accept the collateral consequences of that decision." *Zurcher v. Bilton*, 666 S.E.2d 224, 227 (2008). Namely, that the defendant is foreclosed from relitigating his or her guilt or innocence in a subsequent judicial or quasi-judicial forum. *See id.*; *see also United States v. King*, 673 F.3d 274, 282 (4th Cir. 2012); *United States v. Guzman-Alvarado*, 457 F. App'x 296, 298 (4th Cir. 2011).  A court's acceptance of an *Alford* plea, like an acceptance of a guilty plea, indisputably qualifies as an "adjudication of guilt." *King*, 673 F.3d at 281-82. "[A]n *Alford* plea can only be accepted when the record 'contains strong evidence of actual guilt.'" *Id.* at 282 (quoting *United States v. Mastrapa*, 509 F.3d 652, 659 (4th Cir.2007) (quoting

7

*Alford*, 400 U.S. at 37, 91 S.Ct. 160)).  The defendant has not challenged these indisputable aspects of an *Alford* plea, which were not recognized by the Arbitrator.

The plaintiff asks this Court to set aside the arbitral decision as violative of public policy.  The Court readily does.  In applying the public policy exception, the Fourth Circuit has held that the policy must be "one that specifically militates against the relief ordered by the award." *Dist. 17, United Mine Workers of Am. v. Island Creek Coal Co.*, 179 F.3d 133, 139 (4th Cir. 1999). The award, itself, in this case, violates two public policies of the State of South Carolina.  First, it violates the express and jurisprudentially affirmed policy interest, expressed in  S.C. Code §§ 63-1-20, 16-17-490(10), that the State has a public interest in the protection of children and their families.  The arbitral decision refuses the plaintiff's ability to prioritize the interest of children and families, and thereby threatens it, insofar as the decision disallows the discharge of an employee who has pled guilty to contributing to the delinquency of a minor.  Second, and related to the first, the decision violates the State's public policy that its criminal adjudications be given proper legal effect.

The Fourth Circuit is defensive of arbitration decisions.  It has recognized that "arbitration must be final to be effective." *Westvaco Corp. v. United Paperworkers Int'l Union*, AFL-CIO ex rel. Local Union 676, 171 F.3d 971, 974 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. v. Transportation Communications Int'l Union*, 973 F.2d 276, 278 (4th Cir.1992).  "Permitting judicial second-guessing of arbitral awards 'would transform a binding process into a purely advisory one, and ultimately impair the value of arbitration for labor and management alike.'"   *Westvaco*, 171 F.3d at 974 (quoting *Transportation Communications*, 973 F.2d at 278); *see also Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir.1994). Thus, judicial review of an arbitration award has been

8

characterized as "among the narrowest known to the law." *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978) (internal quotation marks omitted). Absent the most unusual of circumstances, courts must uphold and enforce arbitral awards. *See Westvaco*, 171 F.3d at 974. In reviewing an arbitrator's interpretation, a court examines only whether that interpretation "draw[s] its essence from the contract and [does not] simply reflect the arbitrator's own notions of industrial justice." *Id.* at 975 (quotations omitted).

A court, however, may refuse to enforce "an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 42, 108 S. Ct. 364, 373, 98 L. Ed. 2d 286 (1987) Generally, an arbitration award may be overturned if it "violates well-settled and prevailing public policy, fails to draw its essence from the collective bargaining agreement, or reflects the arbitrator's own notions of right and wrong." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996) (citing Misco, Inc., 484 U.S. at 36). The Supreme Court, however, has noted that there is no "broad judicial power to set aside arbitration awards as against public policy." *Misco,* 484 U.S. at 43, 108 S.Ct. 364. Instead the power is a narrow one. *See Westvaco*, 171 F.3d at 976. And, as the defendant contends, both the United States Supreme Court and this circuit have been reluctant to upset, on public policy grounds, the contractual commitments of parties to arbitrate their grievances. *See, e.g., id.* at 766-72; *Misco*, 484 U.S. at 42-45; *Westvaco,* 171 F.3d at 977; *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir.1994).

As the Court has already indicated, this otherwise narrow exception has application here. S.C. Code § 63-1-20 states, "It shall be the policy of this State to concentrate on the

9

prevention of children's problems as the most important strategy which can be planned and implemented on behalf of children and their families." *See, e.g.*, S.C. Code § 63-1-20. The public policy reflected in this statute, and the one to which Cambest pled guilty, have been recognized by the South Carolina Supreme Court. *See Jensen v. Anderson Cnty. Dep't of Soc. Servs.*, 403 S.E.2d 615, 618 (S.C. 1991) ("The statutes [including Contributing to the Delinquency of a Minor] are contained in a section entitled 'Offenses Against Public Policy' and . . . their purpose is primarily the protection of the public." (emphasis added)); *Whitner v. State*, 492 S.E.2d 777, 780 (S.C. 1997) ("The abuse or neglect of a child at any time during childhood can exact a profound toll on the child herself as well as on society as a whole."). The Court is not commenting on the threat of the underlying conduct alone. The arbitral decision, itself, *enables*, directly, a threat to this public policy by its failure to permit the plaintiff from recognizing the legal quality and implications of Cambest's plea.

Additionally, the Arbitrator's decision offends the State's public policy that its adjudications of guilt be recognized and not reassessed. As already quoted, the "entry of an *Alford* plea at a criminal proceeding has the same preclusive effect as a standard guilty plea" so that defendants "must likewise accept the collateral consequences of that decision." *Zurcher*, 666 S.E.2d at 227. The defendant is foreclosed from relitigating his or her guilt or innocence in a subsequent judicial or quasi-judicial forum. *Id*. But, that is what the Arbitrator effectively, did; he deemed *Cambest* functionally innocent where the State deemed him not. Maybe worse yet, he ordered that the *plaintiff* treat him thusly.

The Court would succinctly distinguish *Westvaco*, relied upon by the defendant, as ineffective to foreclose application of the public policy exception. First, *Westvaco* did not involve adjudicated criminal conduct but rather an alleged violation of the employer's

10

workplace policy against sexual harassment. *See Westvaco*, 171 F.3d at 973. Second, *Westvaco* did not involve a criminal proceeding. In fact, the Fourth Circuit explicitly distinguished such conduct and noted that "criminal misconduct may raise concerns not present here." *Id.* at 977 n.2. Third and necessarily, *Westvaco* did not involve a dispute over whether a guilty plea conclusively established an employee's guilt and, therefore, was not threatening to the integrity of any state adjudication of the same. Other cases cited by the defendant fail for similar reasons. The defendant has not cited a single authority where an employer was forced, by collective bargaining, to reinstitute an employee over a guilty plea, of any kind.

The Court would make only a few other observations. First, it a strange position to rely on the post-mortem explanations of the Solicitor, as the Arbitrator did, to render the plea meaningless evidence of dischargeable conduct. (See ECF No. 1-1 at 9.) No matter what the solicitor says retrospectively, the State *prosecuted* Cambest to plea. And, in so doing, the Solicitor actually remains the best evidence of the plaintiff's conduct. The State was free to drop charges altogether. But, it did not. Cambest made a reasonable calculation in defense strategy. The Court does not mean to blame or second guess. But, there are actual consequences to that decision to plea, about which he was expressly apprised. (ECF No. 38-5 at 6-7, 10-11 ("THE COURT: Now, you understand that regardless of how you plead guilty, whether it be an *Alford* plea or an admission of guilt, under both guilty pleas you're going to have the same record, you're subject to the same sentence, there's really no legal distinction between the two guilty pleas. Do you understand that? MR. CAMBEST: Yes, sir.") But, that is not the plaintiff's burden to accommodate or, rather, credit. The arbitral award says that the plaintiff must accept the

11

subjective litigation strategy of Cambest over the legal meaning of the plea. It does not.

Lastly, the defendant would argue that the plaintiff did not argue its public policy basis to the Arbitrator and, therefore, has waived his right to upon judicial review. As an initial matter, the plaintiff did argue concerning the legal effect the Arbitrator must pay the *Alford* plea. The argument is identical here. More importnatly, the plaintiff could not have raised such bases. The public policy exception is *to the arbitral decision*. It is a collateral challenge to the decision made and not on the merits. The plaintiff cannot waive the right to challenge the arbitration award on public policy grounds before the arbitration award comes into existence.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion for summary judgment (ECF No. 37) is DENIED and the plaintiff's motion for summary judgment (ECF No. 38) is GRANTED. The decision of the Arbitrator is VACATED as inconsistent with the public policy of the State of South Carolina.

IT IS SO ORDERED.

s/ Bruce Howe Hendricks
United States District Judge

Greenville, South Carolina
June 15, 2015